**SO ORDERED.**

**SIGNED March 21, 2014.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

```
              UNITED STATES BANKRUPTCY COURT
              WESTERN DISTRICT OF LOUISIANA
                    LAFAYETTE DIVISION

IN RE:

GULF FLEET HOLDINGS, INC., ET AL          CASE NO. 10-50713

     Debtors                              Chapter 11

-------------------------------------------------------------
ALAN GOODMAN, TRUSTEE OF THE
GULF FLEET LIQUIDATING TRUST,

     Plaintiff

VERSUS                                    ADVERSARY NO.
                                          12-5009

ADRIATIC MARINE, LLC

     Defendant
-------------------------------------------------------------
                    REASONS FOR DECISION
-------------------------------------------------------------
```

This adversary proceeding involves preference claims by Alan Goodman, the trustee of the Gulf Fleet Liquidating Trust (the "Trustee") against Adriatic Marine, LLC ("Adriatic"). The court

took the case under advisement following a September 13, 2013 trial. After reviewing the trial record and considering the relevant authorities, the court rules as follows.

## JURISDICTION

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Moreover, the court may enter final orders on the claims and defenses asserted in this case under Stern v. Marshall, ___U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). See First Choice Drywall, Inc. v. Presbitero (In re First Choice Drywall, Inc.), 2012 WL 4471570 (Bankr. N.D. Ill. Sept. 25, 2012)(bankruptcy court has the power to determine preference actions after Stern ); Olsen v. PG Design/Build, Inc. (In re Smeltzer Plumbing Sys., Inc.), 2011 WL 6176213 (Bankr. N.D. Ill. Dec. 12, 2011)(same); Nanodynamics, Inc. v. Rothstein (In re Nanodynamics, Inc.), 474 B.R. 422, 429 (Bankr. W.D.N.Y. 2012) (same); Appalachian Fuels, LLC v. Energy Coal Resources, Inc. (In re Appalachian Fuels, LLC), 472 B.R. 731, 744 (E.D. Ky. 2012) (same); In re Am. Hous. Found., 469 B.R. 257, 265 (Bankr. N.D. Tex. 2012) (same); In re DBSI, Inc., 467 B.R. 767, 773

-2-

(Bankr. D. Del. 2012) (same); West v. Freedom Medical, Inc. (In re Apex Long Term Acute Care-Katy, LP.), 465 B.R. 452, 463 (Bankr. S.D. Tex. 2011) (same); Burtch v. Huston (In re USDigital, Inc.), 461 B.R. 276, 285 (Bankr. D. Del. 2011) (same).

**BACKGROUND**

Gulf Fleet owned and operated a fleet of offshore and fast supply vessels that supported oil and gas exploration and production companies and other oilfield services companies. Gulf Fleet also operated an independent vessel brokerage business. Gulf Fleet filed for relief under Chapter 11 of the Bankruptcy Code on May 14, 2010. Adriatic owns and operates supply vessels that are leased to offshore gas and exploration companies. From 2008 to 2010, Adriatic leased its vessels and crews through brokers like Gulf Fleet. The parties' relationship prior to the 90-day preference period is reflected in two invoices. The first invoice is dated March 26, 2008 for $49,017 and was paid on June 18, 2008. The second invoice is dated November 2009 for $19,824 and was paid January 14, 2010. The parties' relationship during the 90-day preference period is reflected in four invoices dated December 14, 2009 through January 11, 2010. The total value of these invoices is approximately $148,487. These four preference-period invoices were paid between 73 and 83 days after the invoice dates. Each of the invoices included the terms "net 30" and list a due date 30 days after the date of the invoice.

-3-

The parties have stipulated to all of the elements of a preference claim under 11 U.S.C. § 547(b). The remaining issue tried by the parties was the extent to which any of these preferential transfers are subject to the "ordinary course" defense under 11 U.S.C. § 547(c)(2) or the "new value" defense under 11 U.S.C. § 547(c)(4). Prior to trial, the Trustee filed a motion in limine requesting that the court exclude time sheets and log entries that Adriatic sought to introduce in support of its new value defense, but which were never produced during discovery. The court granted the Trustee's motion in limine given Adriatic's failure to produce these documents prior to the discovery deadline in the court's pre-trial order.

**DISCUSSION**

**A. The Ordinary Course Defense.**

Section 547(c)(2) provides that an otherwise avoidable transfer is not subject to avoidance:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms....

11 U.S.C. § 547(c)(2). The ordinary course exception is an affirmative defense, so Adriatic has the burden of persuasion as to each element of the defense. In re Gulf City Seafoods, 296 F.3d 363, 368 n.5 (5th Cir. 2002). Based on the trial record, there is no genuine dispute that the debts reflected by the challenged invoices were *incurred* in the ordinary course. Rather, the dispute centers on whether the transfers were made in the ordinary course of both parties (which is a subjective inquiry) or whether the transfers were made according to ordinary business terms as reflected in the relevant industry (which is an objective inquiry). In re SGM Acquisition Co. LLC, 439 F3d 233, 239 (5th Cir. 2006).

The subjective prong of the ordinary course defense requires a fact-specific examination of the parties' conduct to determine "whether the transactions between the debtor and the creditor before and during the ninety-day period are consistent." Lightfoot v. Amelia Maritime Services, Inc., (In re Seabridge Marine, Inc.), 412 B.R. 868, 872 (Bankr. E.D. La. 2008). The factors that courts consider include (1) the time period over which the parties engaged in similar transactions, (2) whether the amount or form of payment differ from past practices, (3) the presence of any unusual collection activity, and (4) whether the creditor took actions that gained it an advantage over other creditors in light of the debtor's deteriorating financial condition. See Kleven v.

-5-

Household Bank F.S.B., 334 F. 3d 638, 642 (7th Cir. 2003); In re Quad Systems Corp., 2003 WL 25947345 at *5 (Bankr. E.D. Pa. 2003). A creditor typically addresses these factors by establishing a "baseline of dealing" as far as the parties' past billing, payment, and collection practices. In re Accessair, Inc., 314 B.R. 386, 393 (8th Cir. BAP 2004) (creditor had "the burden of establishing some baseline of dealings between the parties prior to the preference period"). A creditor must establish that the challenged preference-period transfer falls within the normal pattern of payment practices between the parties during the pre-preference period. Id. Section 547(c)(2) provides that an otherwise avoidable transfer is not subject to avoidance:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms ....

11 U.S.C. § 547(c)(2).

Adriatic relies on both the subjective and objective prongs of the ordinary course defense under Section 547(c)(2). With respect to the subjective prong, Adriatic contends that the parties' relationship consisted of regular, recurring transactions that

-6-

reflected the brokerage relationship between the two parties. According to Adriatic, Gulf Fleet would arrange to lease Adriatic's vessels for use by third-party offshore exploration companies. Adriatic would then invoice Gulf Fleet directly, and Gulf Fleet would, in turn, invoice the third-party exploration company. Adriatic's witness, Charles Faucheaux, testified that Gulf Fleet would pay Adriatic once it received payment from the exploration company, and that Adriatic would receive these payments between 60 and 90 days after the invoice date. According to Mr. Faucheaux, the "net 30 days" meant that the invoice was due 30 days after Gulf Fleet received payment from the ultimate customer. The trial record reflects that each of the transfers occurring within the preference period occurred within 60 to 90 days of the dates on the invoices.

After reviewing the record, the court agrees with the Trustee that the two pre-preference period payments do not provide a sufficient pattern (or "baseline") of recurring transactions to support an ordinary course defense under Section 547(c)(2). First, there is nearly a two-year gap between the invoice issued for the first pre-preference transaction and the second pre-preference transaction. The second invoice was also paid within 56 days of the invoice date, which differs from the 73 to 84 day payment periods for the other invoices paid by Gulf Fleet. The payment

-7-

period for the second invoice is also inconsistent with Mr. Faucheaux's testimony of a 60 to 90 day payment period. Finally, the total value of two pre-preference period transactions was smaller than the preference-period transfers.

The lack of a pre-preference period baseline of dealings between Gulf Fleet and Adriatic is not fatal to Adriatic's ordinary course defense. Courts will also look to the terms of the parties' agreement as reflected in invoices or other documents. Where a payment varies from the terms of an invoice, courts may also look to other evidence that the payment was consistent with the parties' agreement. The record, however, does not support Adriatic's contention that the preference-period transfers were consistent with the parties' agreed payment terms. Adriatic contends that the "net 30 days" payment terms on the invoices are consistent with the parties' agreement that Adriatic was to be paid 30 days from receipt of payment by the ultimate customer, not 30 days from the original invoice date. This argument is inconsistent with the Adriatic invoices in the record. These invoices state credit terms of "net 30 days," but include an express "due date" of 30 days from the date of the invoice, not 30 days from the date Gulf Fleet receives payment.

Adriatic's ordinary course argument is also undermined by the testimony of Michael Prejean, Gulf Fleet's former CFO. Mr. Prejean

acknowledged that when Gulf Fleet acted as a broker, it paid boat owners when it received payment from the ultimate customer – i.e. the "pay when paid" agreement alleged by Adriatic. However, until second half of 2009, Gulf Fleet's policy was to pay boat owners approximately 7 days after receiving payment from the ultimate customer. Gulf Fleet abandoned this policy during the second half of 2009 as its financial position worsened. Mr. Prejean testified that the time period between Gulf Fleet's receipt of payment from the ultimate customer and its payment of boat owners increased to over 30 days from payment by the ultimate customer in many cases. Gulf Fleet then received an infusion of capital from its owner, H.I.G. Capital in early 2010, and used this money to pay stale invoices. Accordingly, the turn-around time for payments to boat owners was compressed after February 2010 as Gulf Fleet used this extraordinary capital infusion to pay invoices. The Adriatic transfers challenged by the Trustee occurred during this period. While there is no evidence in the record directly tracing the Adriatic transfers to funds received from this capital infusion, Mr. Prejean's testimony supports Gulf Fleet's argument that these transfers were made under extraordinary circumstances. Given the lack of an established pre-preference period baseline of transactions, the court finds that Adriatic has not met its burden of proving that the challenged transfers occurred in the ordinary course.

With respect to the objective prong of the ordinary course defense, Mr. Faucheaux testified that it is customary for boat owners to be paid on a "pay when paid" basis when working through brokers. However, Mr. Faucheaux's testimony also revealed wide variations among different brokers and end customers as far as the timing of payments. Some of the industry payment times cited by Mr. Faucheaux are inconsistent with the 30-day "pay when paid" payment terms allegedly agreed to by Adriatic and Gulf Fleet. In short, the record does not support an ordinary course defense based on the objective prong of the defense. The court, therefore, finds against Adriatic on its ordinary course defense under 11 U.S.C. § 547(c)(2).

**B. The New Value Defense.**

Adriatic further contends that even if the Trustee has satisfied each of the elements of a preference claim, a portion of the four payments are subject to the "new value" defenses of 11 U.S.C. § 547(c)(4). Section 547(c)(4) provides an exception for transfers "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor – (A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." "New value" is defined as "money or money's worth and goods, services, or new credit, or release by a

-10-

transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under applicable law...." 11 U.S.C. § 547(a)(2). In other words, a creditor must establish that it provided the debtor with "something new that is of tangible value." In re Martin Wright Electric Co., 2008 WL 114926 at *9 (Bankr. W.D. Tex. Jan. 9, 2008) (citing In re Fuel Oil Supply & Terminaling, Inc., 837 F. 2d 224, 230 (5th Cir. 1988)).

The record supports a new value defense for the $22,386 transfer occurring March 3, 2010. The new value in this case consists of the use of a vessel for approximately 17.25 days from February 27, 2010, to March 16, 2010, at a day rate of $3,950 and a "cook rate" of $350 per day.[1] The Trustee does not dispute the new value defense for the $22,386 payment. The record, however, is less clear with respect to a $67,840 transfer reflected in a check dated March 10, 2010 and posted to Adriatic's bank account on March 15, 2010. (See Defendant's Trial Exhibit #7 at 2). Adriatic provided new value to Gulf Fleet at a rate of $4,300 per day from March 10th through March 16th. However, the new value defense would only apply to the new value provided after the March 10th check was **delivered** to Adriatic, not the date the check was signed or the

---

[1] This computation does not include certain "variable" costs, such as bunk and meal costs, because these expenses are reflected in documents excluded by the court's ruling on the motion in limine.

-11-

date the check posted. In re Eleva, Inc., 235 B.R. 486, 488 (10th Cir. BAP 1999); Kroh Bros. Dev. Co. v. Continental Constr. Engineers, Inc. (In re Kroh Bros. Dev. Co.), 930 F.2d 648, 650 (8th Cir.1991). The delivery date for the March 10th check falls from March 10th to March 15th, but Adriatic has not met its burden of proving a delivery date prior to the March 15th posting date. See In re Interstate Bakeries Corp., 499 B.R. 376 (Bankr. W.D. Mo. 2013)(using the check posting date where there is no evidence of an earlier delivery date); see also Webster v. The Management Network Group, Inc. (In re Nettel Corp.), 364 B.R. 433, 456 (Bankr. D.D.C. 2006). Accordingly, the court finds in favor of Adriatic on its new value defense for a total of $30,986 ($22,386 for the March 3rd transfer and $8,600 for the March 15th transfer).

## CONCLUSION

For the foregoing reasons, the court finds in favor of the Trustee on his preference claim and finds that $117,519 of transfers are subject to avoidance under 11 U.S.C. § 547(b). This amount excludes preference period transfers totaling $30,986 that are subject to the new value defense under 11 U.S.C. § 547(c)(4). The court finds against Adriatic on its ordinary course defense. In all other respects, relief is denied. The Trustee shall submit a judgment reflecting the court's ruling within 20 days.

###